Good morning. May it please the Court, Garrett Smee with Grady and Associates on behalf of Appellant Gary Atkins. There are three issues essentially in this case. The first issue is whether Mr. Atkins raised a tribal issue of material fact as to whether the government did not provide adequate safeguards for his medical information. The second issue is whether Mr. Atkins established a tribal issue of material fact regarding his wrongful disclosure cause of action. And the third issue is whether Magistrate Gallo abused his discretion in denying leave to conduct discovery. We submit that the answer to all those three questions is yes. The lower court determined that there was not enough evidence to show an intentional violation of the Privacy Act. Intentional means something more than gross negligence. It means a flagrant disregard. With respect to the inadequate safeguards, there's knowledge going back to 2007 that the hospital was aware that it had inadequate safeguards. And going into September of 2013, the safeguards had not been corrected. That's a six-year span of time. In a hospital environment where medical diagnoses are very sensitive, where patients deserve the penultimate privacy expectations, a six-year span of time is a flagrant disregard of patient rights. Wasn't there insufficient evidence because the discovery wasn't timely engaged in by your firm? I mean, I understand that the counsel in charge of it had some personal issues and that was his excuse for not pursuing discovery. But you had other people in the firm who could have taken over for him and done the discovery on time. It seems as though you just didn't do discovery and you didn't get the evidence you needed to survive summary judgment. That's correct, Your Honor. It's hard to prove a case without discovery. There were two attorneys that were responsible for this file. Mr. Beige had a series of calamities. He had a concussion. He suffered bouts of insomnia and anxiety for months. And his doctors were telling him that his prognosis was day-to-day. And Mr. Beige, when questioned by Mr. Grady how the progress of the case was going, Mr. Beige would frequently say, well, it's day-to-day and I hope to return soon. And if you're in Mr. Beige's position, an attorney who had been working for Grady and Associates for over 13 years, it might be hard at that point to establish or admit that he had a problem. And he may have not been able to establish or diagnose himself with a problem. And he was depending on the doctors to tell him what was going on. And there was a lapse in communication. After he had the bouts of anxiety and insomnia, he had strep throat. And in the process there was a divorce filing. And then he had the flu. I mean it was an absolute series of calamities that prevented discovery. And we brought this to the attention of Magistrate Gallo at the mandatory settlement conference in February. And at that point, Magistrate Gallo summarily denied that he would extend discovery, which had the impact of keeping us or dissuading us from filing an ex parte for relief. We were working on that until late February. I was trying to get a stipulation with the government. And we worked probably over a week on it. And the government was indicating that they were willing to stipulate to allow the discovery to take place. And that fell apart because they felt that they had to get their motion on calendar. Once the motion was on calendar, the ex parte was denied because we couldn't get a calendaring date on a hearing. Can I ask you what do you think discovery would have shown? What discovery would you have conducted and what would it have proved? Dr. Bavaro was a key witness in this case. Dr. Bavaro was the person that told Mr. Atkins that there were inadequate safeguards, that the problems list could be accessed without an auditing capability. And Dr. Bavaro would have been questioned about who she told at the hospital about this problem going back to 2007. And she would have disclosed that there were administrators that were on notice of this problem. That's a key aspect of this case because if administrators were on notice going into 2007 that there were problems and they didn't fix it until after 2013, that is reckless. That is much more than just gross negligence. Mr. Smee, but how would that have helped you on the statute of limitations question because your client testified in his deposition that he knew about the problem back in 2009. So what additional discovery would have helped you on the statute? Well, the additional discovery that would have helped would have pertained to the continuing violations theory. And there's also an aspect of when Mr. Atkins' damages accrued. We do not believe his damages truly accrued until the cause of action became in existence, which was 2011 when Mr. Molinos told Mr. Atkins that there was no proper accounting function. I don't think additional discovery would have revealed much other than more information on continuing violations. And with respect to the disclosure cause of action in the statute of limitations, that cause of action did not come into fruition until June of 2010, June 24th. We filed a lawsuit on June 8th, 2012 within the two-year statute of limitations. So I've discussed the inadequate safeguards cause of action. The court also found that there was not an intentional violation with respect to wrongful disclosure. And I will submit that the statement that was made by Lieutenant Commander Simons in the open corridor with the third party present mentioning Mr. Atkins' blood counts. Who's the third party? We don't know. We don't know who the third party was. But the lower court determined as a matter of law that that third party could not have been present during that discussion. On a motion for summary judgment, when the evidentiary inferences are supposed to be liberally construed, there's an equally plausible inference that this third party may have been present to overhear this conversation. The third party didn't say anything like, well, guys, I'll see you guys later or, you know, we'll catch on another time. There was just a silence. So maybe he wasn't participating in the discussion. But there's also evidence in the sense that Pratt and Simons discussed this problem with HR. They took it to the HR department. And the inference is that they discussed his medical diagnosis at that time, too. And, in fact, the HR department told him, told both Pratt and Simons, they were allowed to access this information as an employee issue. And when Mr. Atkins accused them of accessing the information, Pratt acknowledged that he had made a mistake and he said, what do you want me to do? Beg forgiveness. That's strong evidence that there's been, at the very least, improper access. And we do disagree with the Cacho decision, the district court decision out of D.C. There's a D.C. Circuit Court decision that was decided before Cacho, Bigelow versus the Department of Defense. It's a D.C. Circuit case 2000-217-F3, 875-876. And in that case, they determined that even improper access could lead to a violation of the Privacy Act. The Cacho decision has not been cited by any court of appeals decisions since it was decided in 2010. So those are the two issues. The third issue with respect to Magistrate Gallo's decision, there was no prejudice. There wouldn't have been any prejudice conducting those three depositions. There was no impact on the court's calendar. There was no impact on the trial date. This was a mistake or inadvertence of counsel for Mr. Atkins, and Mr. Atkins suffered from that. They imposed that liability on Mr. Atkins. Based on the Pioneer decision, it was an abuse of discretion. And I'd like to talk a little bit more about the statute of limitations. So as I understand, the court found that the improper disclosure claim was not barred by the statute of limitations, and that the inadequate safeguards only was barred as to the restriction of access claim, but not as to the auditing claim. I don't believe that the lower court determined that any of the causes of action were barred by the statute of limitations. Well, I think he said that your restriction of access claim, in fact, I just looked at it again, because he made a distinction as to, I guess rather not a claim, but as to your theory, that your failure to audit theory was not barred by the statute of limitations, but the restriction of access theory was barred because he knew earlier that there was no restriction on access, but he didn't know that there was no auditing to later determine who actually accessed. I think I understand that rationale. What I would say is that he was probably relying on Mr. Atkins' EEO declaration. His EEO declaration was full of speculation. Also, I disagree with the concept that the statute of limitations accrues when a person suspects that a violation has occurred. It has to be more than just a suspicion. It has to be a reasonable suspicion. It has to be a suspicion that a reasonable person would say, yes, there's been a violation. And his speculation that he put forth in the EEO declaration does not establish that he knew of a violation. And also, he hadn't had damages yet. There had not been any damages element until 2011 and in 2010. And what's the theory of damages that arose then? Well, there are two theories with the improper disclosure theory of damages. Those damages took place when Mr. Atkins received lower performance bonuses, and that carried with him when he transferred to the VA because if he had higher bonuses, he would have had a higher salary when he got to the VA. And then we also have a disagreement with respect to emotional distress and whether that is recoverable for an inadequate safeguard cause of action. The Cooper decision is the United States Supreme Court decision, and they determined when there's been improper disclosure, you cannot recover for emotional distress. But they didn't have in front of it the inadequate safeguard cause of action. Under E10 of the Privacy Act, 552AE10, it specifically spells out that when there's inadequate safeguards, people are going to be emotionally upset. They're going to be embarrassed. They're going to have a sense of humiliation. They're going to be very paranoid about what type of information is being disclosed by the government. That's different than the improper disclosure cause of action There's nothing spelled out about emotional distress. So we believe that this case is different from the Cooper decision, and it's an issue that has not yet been decided by the Supreme Court. So you're relying on that language which could result in substantial harm, embarrassment, inconvenience, or unfairness. It's spelled out specifically in the statute. The legislature intended that there be emotional distress damages for this type of cause of action. And if you think about it, what type of damages exist for an inadequate safeguard cause of action? You can't have injunctive relief for inadequate safeguards. It's going to be next to impossible to establish monetary loss. Can you order them to implement safeguards like a mandatory injunction? I don't think that injunctive relief is something that is available for inadequate safeguards. I would argue it the other way, I think. So I think that there are forms of injunctive relief for the other types of violations under the Privacy Act, but not for inadequate safeguards. And I'd like to reserve some time for response. Thank you, Judge. Good morning. May it please the Court, Assistant United States Attorney Katherine Parker for the aptly Secretary Raymond Mabus. District Judge Curiel's decision was thorough and thoughtful and legally correct and should be affirmed. The District Court was careful to parse Appellant Plaintiff's four different theories of violation of the Privacy Act. And those four theories appear at page 48 of the excerpts of record. Three of the theories relate to safeguards. The fourth relates to disclosure, and I will address the disclosure theory last. As to the first safeguards theory, this is the theory that there is a problem list in the medical record system to which access is not restricted to the same extent that access is restricted to the full medical record. This is the theory regarding which the District Court found that the cause of action is time-barred. The District Court correctly found that Mr. Atkins learned of this issue in 2009, and this evidence is from Mr. Atkins' deposition at pages 155 of the excerpts of record, which continues at page 2 of the supplemental excerpts of record. The District Court correctly found that Mr. Atkins became aware of this issue in 2009. It did not file his lawsuit until 2012, and therefore this theory was time-barred. The continuous violation doctrine was not briefed in the District Court, and Appellant first cited case law regarding this doctrine in the reply brief here in this court. The continuous violation doctrine does not apply here, and that is because the case cited by Appellant is a Title VII case. This is a Privacy Act case. The language that Congress used in those two statutes to set the statutes of limitation is very different. In Title VII, what is relevant is when the unlawful employment practice, quote, occurred. And in that context, in the Title VII context, under a hostile work environment theory, there could be a series of conduct that occurs over a period of time, and therefore courts apply the continuous violation doctrine. Here we're looking at the Privacy Act. Congress, in enacting the Privacy Act, used different wording for the statute of limitations and said that an action must be filed from within two years from the date on which a cause of action arose. Therefore, under the Privacy Act, what is relevant is the beginning of the conduct. And I searched and could not find a single Privacy Act case in any federal court applying the continuous violation doctrine, which is specific to the language of Title VII. What incentive would he have had to file suit in 2009? There hadn't been any adverse action or nothing had happened to him. So every employee could just go in and file a lawsuit because they became aware of the practice, even though it had no impact on them personally? That is the argument that's been made in the papers here but is inconsistent with the record. According to Mr. Atkins' declaration, he found that his annual bonuses, and this is a quote from the record, his annual bonuses were unusually low in 2008, 2009, and 2010. Also, Mr. Atkins had begun to suspect that other employees were aware of his diagnosis as early as 2008 or 2007. Right, but suspicion isn't enough. It is. Under the Bowyer case, Your Honor, this court held that suspicion is enough and that it gives rise to a duty to investigate. In Bowyer, this court went so far as to say that hearsay and rumors are enough to trigger that obligation to investigate. Here, as of 2009— How was he to investigate this? He could have sought an audit. He could have spoken with people. He could have done any number of things and didn't do any of those things and waited three years to file his cause of action. My real problem with this case is I feel that the record is just so insufficient to evaluate whether— I mean, the real problem is to evaluate whether the statute of limitations even really bars anything here and to evaluate whether or not there was an intentional or willful or reckless even act by the hospital and how it handled people's medical records, which are subject to the Privacy Act. Why wasn't it an abuse of discretion to not allow discovery in this case? It was not an abuse of discretion, and this was an issue that was addressed by both the magistrate judge and the district judge. I know. I've read the decisions. And the magistrate judge, viewing the course of discovery and the fact that Mr. Bache had been present during the telephonic conference during which the dates were set for the case, that he should have known of that date and acted diligently to conduct discovery. Furthermore, that Mr. Bache had not—he had not even filed a notice of appearance in the— Right, but it sounds like he was pretty incapacitated, maybe in denial. I mean, you know, at some point there's some level of civility and compassion that has to enter into these decisions. Absolutely, and Mr. Atkins could have made a showing that there was some discovery that he needed to oppose the summary judgment and did not follow the procedural steps to make that showing. The ex parte application was brought to the magistrate judge who denied it without opposition. The opportunity to appeal that to the district judge under Rule 72 was not taken advantage of by the plaintiff at that time. When the motion for summary judgment was filed, there was simply a mention in a footnote of Rule 56D, which is the former Rule 56F, which allows a party to make a showing that it needs additional evidence to oppose a summary judgment motion. There was no showing that the depositions that were requested would have made any difference to the summary judgment result. The only request that was made in the district court at that time were for three witnesses, Dr. Mary Bavaro, who's a physician, Lisa Hess, who is a social worker, so they're users of the ALTA system, and then a name was raised at that time of someone named Vic Murillo, who had not been brought up during discovery and who had not been mentioned in any of Mr. Atkins' declarations in this case, and therefore there's no showing at all as to what he could provide. With respect to Dr. Bavaro and Lisa Hess, the district judge overruled the government's hearsay objections to that evidence. Mr. Atkins had the opportunity to put into the record his version, his characterization of his conversations with those witnesses. The district court did not overrule those objections, considered the evidence, but found that even taking those witness statements, Mr. Atkins' characterization of those witness statements, that there simply was not enough evidence to show any willful violation of the Privacy Act with regards to the safeguards claim. And that was the only discovery that was specifically requested in the district court, and therefore the district court looked at the requests that had been made, found that there were other attorneys who there had been no explanation of why they did not seek an extension of discovery or serve discovery. And as to Mr. Bache, the record reflects that in the time frame leading up to the discovery cutoff, the discovery cutoff was January 31st of 2014, that Mr. Bache extensively defended Mr. Atkins at his deposition in the prior month on December 3rd of 2013, and that's in the excerpts of record at 134. So there's been no showing that would be, the district court didn't have in front of it anything that would rise to the level of discretion in denying that request. And that is the standard, it's abusive discretion standard. The Pioneer case is a case interpreting a specific bankruptcy rule, and therefore is not relevant in this context. The district court did apply the statute of limitations only as to one theory in the case, which is the access to the problem list. As to the statute of limitations could apply to the audit capabilities as well, as indicated in the government's brief, Mr. Atkins testified in his deposition that he was aware of that in 2009 as well, and that appears at page 158 of the excerpts of record. As to the, however the district court did correctly decide that issue on the willfulness prong, the, Mr. Atkins did not provide any evidence to suggest that the employees that he spoke to had knowledge of the audit capabilities of the system. And furthermore, there's an emphasis on the length of time of this alleged issue. In the briefs, the appellant indicated that there was a four-year time span. Here at argument, counsel has extended that to six years. There's simply no evidence in the record to suggest that that is true, and that the hospital was made aware of a problem at some given date, and simply ignored it for a period of years. It's not the hospital's practice, and it's not reflected by the record. There's no date in the record associated with the alleged report by Mary Bavaro to hospital administrators. The discussion of that is at page 204 of the excerpts of record, and there's no date associated with that. And there's simply no evidence at all in the record to support the argument made this morning that a report was made as early as 2007. Moreover, the record also does not support that there was a problem that continued until 2013. There's been no citation for that date, and there's no support for it in the record. To the contrary, it's confirmed in the record by Lisa Hess that as of the fall of 2010, as to Mr. Atkins' specific medical condition, the problem list did not show that information. And Mr. Atkins confirmed that himself in his declaration that that was the case in late 2010, and that his confirmation of that appears at page 210 of the excerpts of record. Simply, there is no evidence to support a longstanding problem that was ignored by the hospital. Finally, as to the disclosure cause of action, the district court carefully reviewed the evidence provided by Mr. Atkins and held that it would be too speculative to find that there had been a disclosure of information which was gleaned from a privacy act system of records. And as to the hallway conversation that was recorded, even if the court had found that a third party was present, the district court looked at the substance of that conversation and said it's not even clear that there was a disclosure of any information regarding Mr. Atkins himself. There was a discussion of acupuncture and a discussion of what the benefits of acupuncture are, not that there was any information about Mr. Atkins disclosed to anyone at that time. And finally, regarding the alleged human resources conversation, the evidence does not even support that that conversation took place. Mr. Atkins doesn't know whether it took place or not, and there's no evidence to support if it did take place, what was the subject of that conversation. I'd like to ask you a question about the improper disclosure. So the statute says no agency shall disclose any record to any other person. I skipped some language in between. Can that any other person be the plaintiff himself or herself, or does it have to be a third party? It has to be a third party. And is that by case law? I apologize, I don't have a case at my fingertips, but the case law allows disclosure specifically to the person who the record pertains to. And I know this in the context of if you make a Privacy Act request for records, the agency can give you your own records. I also wanted to address on that topic whether access can be a Privacy Act violation. The only case that the government and the district court had found below was the Cacho case. And I apologize, the Bigelow case hadn't been cited and hadn't been brought to the court's attention as supplemental authority, and therefore not prepared to address it. If the court would like further briefing on that case, I'd be happy to look at it and provide it. However, the Cacho court was very careful to analyze the language of the Privacy Act and the language of HIPAA and found that looking at both of those statutes, we cannot imply in the Privacy Act context a cause of action for improper access, which is a cause of action that HIPAA specifically declines to provide to an individual. And the analysis there was very thorough as to whether access creates a cause of action for violation of the Privacy Act. But the Privacy Act covers a much broader section of documents and records than HIPAA does, doesn't it? That's true. That's true. So you wouldn't necessarily read them as coextensive because the Privacy Act covers a much broader range of documents totally unrelated to what HIPAA covers. In the context of HIPAA, however, the Congress has legislated in the area of many things related to medical records, but specifically access to medical records and had declined to provide a cause of action. So if you could visualize this as a Venn diagram and you have HIPAA on one side and then a much larger circle, it's that area where they intersect and there's overlap That would be the strongest part of your argument, I would think. That's correct. And that's what the Cochrane Court was looking at and said, because Congress has explicitly declined to provide this, we can't read it in to a Privacy Act cause of action related to medical records. Would the Court prefer or accept briefing regarding the Bigelow case, which I have no information about today? Thank you very much. And with that, I would again reiterate how thorough the District Court was in carefully parsing the elements of plaintiff's theory and finding that there simply was not enough evidence to support a trial on a Privacy Act cause of action. Thank you. Thank you, Counselor. I'd like to address the argument that Mr. Atkins was not identified as the person that would have benefited from the acupuncture, because in that discussion, Mr. Atkins says, I don't know what I would use acupuncture for. Maybe for relaxation or things like that. The response from Lieutenant Commander Simons was, yeah, relaxation, but it also helps for counts, meaning blood counts. That was a statement that was specific. That was actually recorded, wasn't it? It was recorded. That's correct. And there's a transcript that's been a part of the record. But there's asterisks before the word counts or before blood. I don't recall that there was asterisks. I do know that there was asterisks somewhere in that transcript. I don't recall if it was right before counts. Why are there asterisks there? I mean, it's kind of because everyone interprets it as saying blood counts or counts. Was that just blocked out by someone? I'm not sure why the asterisks are there, Your Honor, but I do know that the reference was clearly to blood counts, and that's something that had particular application to Mr. Atkins in light of his condition. With respect to the Boyer decision and whether mere suspicion is significant in the sense that it prompts the statute of limitations, the better decision is the Rose decision from the Ninth Circuit. And in that case, Rose, they said that it needs to be reasonable. You have to either know of the violation or you have to have a reasonable belief that the violation has occurred. It's not just a mere suspicion. There's been an argument that hearsay and rumors are significant enough to prompt the statute of limitations. That's not what happened in Boyer. The person in Boyer was told specifically that there was a memo in his personnel file with derogatory information, and he knew that that information specifically pertained to him. In Mr. Atkins' case, he knew that generally information was available to other people that didn't have a need to know, but he didn't know that it was specifically applicable to him. With regard to investigation, there is an argument that Mr. Atkins had a responsibility upon suspicion to investigate the issue. He requested an audit, and the audit did not show that people had accessed this information that he suspected had accessed the information. But unbeknownst to him, the audit didn't show everything that it should have shown because you had this problems list that was accessible to everyone that did not have an audit capacity. So he did investigate the issue, and the information wasn't made known to him because of this defect in the alpha system. Your time is up. If you can wind it up in about 30 seconds. Your Honor, I'll submit on that. Thank you. Thank you, counsel. Case just argued will be submitted.
judges: Reinhardt, Wardlaw, Bennett